UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHEN WHALEN,

                   Plaintiff,                         8:08-CV-1344
v.                                            (GTS/RFT)

COUNTY OF CLINTON; and TERRY GUYNUP,
Clinton Cnty. Sheriff's Deputy,

                   Defendants.
_____

APPEARANCES:                         OF COUNSEL:

LAW OFFICE OF JOHN A. PIASECKI      JOHN A. PIASECKI, ESQ.
    Counsel for Plaintiff
436 East Main Street
Post Office Box 899
Malone, New York 12953

MURPHY, BURNS, BARBER & MURPHY, LLP   THOMAS K. MURPHY, ESQ.
    Counsel for Defendants
226 Great Oaks Boulevard
Albany, New York 12203

FITZGERALD MORRIS BAKER FIRTH PC    JOHN D. ASPLAND, ESQ.
    Counsel for Defendant Guynup        WILLIAM A. SCOTT, ESQ.
16 Pearl Street
Post Office Box 2017
Glens Falls, New York 12801

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

       Currently before the Court, in this civil rights action filed by Stephen Whalen

("Plaintiff") against County of Clinton and Terry Guynup ("Defendants") pursuant to 42 U.S.C.

§ 1983, are the following: (1) Defendant County of Clinton's motion for summary judgment

pursuant to Fed. R. Civ. P. 56 (Dkt. No. 43), and (2) Defendant Guynup's motion for summary

judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 44).  For the reasons set forth below,

Defendant County of Clinton's motion is granted, and Defendant Guynup's motion is denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, Plaintiff's Amended Complaint alleges the following. (Dkt. No. 26.) On or

about September 19, 2007, at approximately 4:00 a.m., Plaintiff was committed to the Clinton

County Jail ("the jail") following an arraignment in the Town of Dannemora Town Court. (Dkt.

No. 26 at 4.) At some point after he was placed in a holding cell, Plaintiff requested a blanket

from the officers on duty because he was cold. (*Id.*) Thereafter, Defendant Guynup, a police

officer with the Clinton County Sheriff's Department, used excessive force against Plaintiff in

violation of Plaintiff's Eighth Amendment Constitutional rights. (*Id.*) Defendant Guynup's use of

force included handcuffing Plaintiff behind the back, throwing Plaintiff on his face onto the jail

floor, repeatedly kicking Plaintiff, and beating Plaintiff. (*Id.*) Such use of excessive force was

carried out pursuant to the policies enacted by Defendant County of Clinton. (*Id.*) As a result of

Defendant Guynup's actions, Plaintiff sustained injuries that included nerve damage, loss of

sensation in his hands and wrists, cuts, abrasions, contusions, and a concussion. (*Id.*)

As relief, Plaintiff seeks compensatory damages against both Defendants County of

Clinton and Guynup in the amount of $100,000.00. (*Id.* at 5.) Plaintiff also seeks $25,000.00 in

punitive damages against Defendant Guynup. (*Id.*)

### B.      Undisputed Material Facts

#### 1.      The Parties' Rule 7.1 Statements

Pursuant to the Court's local rules, a party filing a motion for summary judgment is

required to file a Statement of Material Facts ("Rule 7.1 Statement"). N.D.N.Y. L.R. 7.1(a)(3). In

response, the non-movant is required to respond to the movant's Rule 7.1 Statement ("Rule 7.1

Response"). N.D.N.Y. L.R. 7.1(a)(3). Specifically, Local Rule 7.1 directs as follows:

> The opposing party shall file a response to the [movant's] Statement of
> Material Facts. The non-movant's response shall mirror the movant's
> Statement of Material Facts by admitting and/or denying each of the
> movant's assertions in matching numbered paragraphs. Each denial
> shall set forth a specific citation to the record where the factual issue
> arises. The non-movant's response may also set forth any additional
> material facts that the non-movant contends are in dispute in
> separately numbered paragraph. <u>The Court shall deem admitted any
> facts set forth in the Statement of Material Facts that the opposing
> party does not specifically controvert.</u>

N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original).

Here, Defendant County of Clinton and Defendant Guynup submitted separate Rule 7.1

Statements in support of their motions for summary judgment. (Dkt. No. 43, Attach. 1 [Def.

County of Clinton]; Dkt. No. 44, Attach. 1 [Def. Guynup].) Through counsel, Plaintiff responded

by submitting a document entitled "Answering Affidavit and Counterstatement of Facts"

("Answering Affidavit"). (Dkt. No. 46.)

Plaintiff's Answering Affidavit fails to meet requirements for a Rule 7.1 Response. (*See

generally* Dkt. No. 46.) N.D.N.Y. L.R. 7.1(a)(3). Specifically, the Answering Affidavit does not

mirror either Defendant County of Clinton's or Defendant Guynup's Rule 7.1 Statements; it does

not specifically admit or deny any facts contained in Defendants' Rule 7.1 Statements; and it

does not contain citations to the record.[1] (*Id.*) As a result, pursuant to Local Rule 7.1, the Court

would be warranted in holding that the facts contained in Defendants' Rule 7.1 Statements are

---

[1]    Plaintiff did not submit any exhibits or attachments in support of his opposition to
Defendants' motions, and he did not make reference to the exhibits or attachments Defendants'
submitted in support of their motions. (*See generally* Dkt. No. 46.) Instead, throughout the
Answering Affidavit, and without explanation, Plaintiff's counsel makes vague references to
"the deposition process," "Exhibits 7 and 8," "Deposition Exhibit 7," "deposition Exhibit 8," and
"PP11-12 of [Defendant Guynup's] deposition." (*Id.*)

admitted.[2]

However, a court is not bound to take as fact those statements contained in the movant's Rule 7.1 Statement that are clearly controverted by the record. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."); *see also Watt v. New York Botanical Garden*, 98-CV-1095, 2000 WL 193626, at *1, n.1 (S.D.N.Y. Feb. 16, 2000) ("[W]here the cited materials do not support the factual assertions in the Statements, the court is free to disregard the assertion."). Accordingly, what follows are the facts of the case based on the Court's extensive review of the record, which includes two digital versatile discs ("DVDs") showing surveillance footage of portions of the night Plaintiff was held in custody at the jail. Unless otherwise noted, the facts are undisputed.

### 2.    The Undisputed Facts

#### a.    Events Preceding Defendant Guynup's Use of Force

At approximately 12:00 a.m. on September 19, 2007, Plaintiff was arrested for driving while intoxicated by New York State Troopers. (Dkt. No. 44, Attach. 5 at 42-43; Dkt. No. 44, Attach. 5 at 63.) The arresting officers brought Plaintiff to Dannemora Town Court where he was arraigned by Justice Thomas Douglas. (Dkt. No. 44, Attach. 5 at 43.) After Justice Douglas set bail, he ordered Plaintiff to spend the rest of the night in the jail. (Dkt. No. 44, Attach. 5 at 44.)

---

[2]    The Court finds *Buck v. Cleary*, 345 F. App'x 660 (2d Cir. 2009), distinguishable. In *Buck*, the Second Circuit reversed the district court's adoption of the movant's Rule 7.1 Statement because, although the non-movant's Rule 7.1 Response did not mirror the movant's Rule 7.1 Statement and the non-movant's Rule 7.1 Response did not contain record citations, the non-movant's Rule 7.1 Response was supported by, and contained citations to, affidavits submitted in conjunction with his Rule 7.1 Response; and the non-movant proceeded *pro se*. *Buck*, 345 F. App'x at 662. The present case is distinguishable because Plaintiff not only failed to comply with Rule 7.1(a)(3), but, unlike the non-movant in *Buck*, he also failed to cite to the one affidavit he submitted in support; and Plaintiff is represented by counsel. (*See generally* Dkt. No. 46, Attach. 1.)

New York State Troopers delivered Plaintiff to the jail at approximately 4:00 a.m. (Dkt. No. 44, Attach. 4 at 186.) Plaintiff did not cooperate during processing, so Sergeant Daniel Dashnaw, the supervisor on duty when Plaintiff arrived at the jail, ordered Plaintiff to be placed in a holding cell until Plaintiff was "ready to cooperate." (Dkt. No. 44, Attach. 4 at 68-70, 188.)

Shortly after Plaintiff entered the holding cell, he requested a blanket from the officers on duty.[3] Plaintiff admitted at his deposition that he was yelling, "pounding, knocking on the door[ and] the window, saying [he] wanted a blanket." (Dkt. No. 44, Attach. 4 at 76-77.) Sergeant Dashnaw described this behavior as "disruptive." (Dkt. No. 44, Attach. 4 at 189.) Plaintiff agreed that he became "mouthy" with and "us[ed] obscenities" at the officers once he arrived at the jail. (Dkt. No. 44, Attach. 4 at 70.) Plaintiff continued this same behavior through the time Defendant Guynup arrived at the jail at 5:30 a.m. to begin his shift. (*Id.*)

**b.      Plaintiff and Defendant Guynup's Interactions**

Sometime after Defendant Guynup arrived at the jail (the precise timing is unclear from the record), and while Plaintiff was still punching and pounding the holding cell's windows intermittently, Defendant Guynup walked over to Plaintiff's cell. (Dkt. No. 45, Disc 2, Track 1, at 45:33.)[4] Plaintiff and Defendant Guynup spoke[5] back and forth through the cell's windows for

---

[3]      Plaintiff estimates he requested a blanket 20-30 minutes after entering the cell. (Dkt. No. 44, Attach. 4 at 76.) Officer Dashnaw estimates the request came after only 10-15 minutes. (Dkt. No. 44, Attach. 4 at 188; Dkt. No. 44, Attach. 5 at 29.)

[4]      In support of his motion for summary judgment, Defendant Guynup submitted two DVDs, containing a total of five tracks, that contain visual surveillance footage (no audio is available) from the jail on the early morning of September 19, 2007. (Dkt. No. 45.) Disc One contains two tracks: the first is entitled "Inmate Whalen Intake Floor"; the second is entitled "Inmate Whalen." (*See generally* Dkt. No. 45, Disc One.) Disc Two contains three tracks: the first is entitled "Inmate Whalen Holding 21"; the second is entitled "Inmate Whalen Holding 22"; the third is entitled "Inmate Whalen Holding 23." (*See generally* Dkt. No. 45, Disc Two.) For purposes of this Decision and Order, the Court will cite to the discs as follows: "Dkt. No. 45, Disc ___, Track ___, at ___:___:___."

[5]      Without any audio, it is impossible for the Court to accurately determine the volume of the parties' voices, so the Court uses the verb "to speak" without intending to make a

approximately ten seconds before Defendant Guynup opened the door of Plaintiff's cell. (*Id.* at
45:33-45:44.) Defendant Guynup then entered the cell, swiftly shoved Plaintiff toward the back
wall, and pointed toward the sidewall where a built-in bench was located. (*Id.* at 45:44-45:52.)
Defendant Guynup then pushed Plaintiff onto the bench, and the two spoke back and forth for
another approximately 20 seconds before Defendant Guynup walked out and closed the cell's
door. (*Id.* at 45:52-46:22.)

During the next approximately nine minutes, Plaintiff walked around his cell, punched
and pounded the window of the cell, and spoke to the officers outside his cell. (*Id.* at 46:25-
55:23.) Defendant Guynup returned to Plaintiff's cell, opened the door, entered, and pointed
again toward the sidewall with the bench. (*Id.* at 55:24-55:31.) The two spoke back and forth for
approximately 15 seconds as Plaintiff walked toward the sidewall, put his hands on the wall, and
was handcuffed by an unidentified officer. (*Id.* at 55:24-56:17.) A second unidentified officer
then brought Plaintiff a blanket and dropped it at Plaintiff's feet. (*Id.* at 56:31.)

Approximately five minutes later, while Plaintiff continued speaking to the officers
through the glass and tapping and/or kicking the glass with his knees and feet, Defendant
Guynup returned to Plaintiff's cell. (*Id.* at 1:01:19.) Defendant Guynup opened the door to the
cell and entered only enough to grab Plaintiff, who was standing just inside the doorway, by the
back of the neck with his right hand and by the jumpsuit with his left hand. (*Id.* at 1:01:22-
1:01:24.) With this grip, Defendant Guynup dragged Plaintiff out of the cell and pulled Plaintiff
onto the ground outside the holding cell while Plaintiff remained handcuffed. (Dkt. No. 45, Disc
1, Track 1, at 1:37-1:42.) Plaintiff ultimately landed on his stomach with the left side of his face
on the ground. (*Id.* at 1:42.) Defendant Guynup was located on Plaintiff's left side, bending

---

factual finding as to the volume of the parties' voices. Throughout the footage, however, it is
clear that the parties spoke to one another.

down. (*Id.*) At his deposition, Defendant Guynup testified that "affirmative duty states that" he was not allowed to leave Plaintiff in his cell "to hurt himself or anybody else." (Dkt. No. 44, Attach. 4 at 173; Dkt. No. 44, Attach. 5 at 13.)

While Plaintiff remained on the ground, Defendant Guynup pushed Plaintiff's handcuffed arms into his back toward the floor, and then Defendant Guynup used his right hand to hold onto Plaintiff's wrists while he pushed Plaintiff's face and head into the ground with his left hand. (*Id.* at 1:43-1:47.) Defendant Guynup pushed Plaintiff's face and head again, in the same manner, two or three more times before standing. (*Id.* at 1:47-1:51.) At this point, four officers, including Defendant Guynup, stood above Plaintiff, who was still on the floor. (*Id.* at 1:51.) Two seconds later, Defendant Guynup bent down again and grabbed Plaintiff's hair with his left hand and turned Plaintiff's face directly into the floor. (*Id.* at 1:54.) Defendant Guynup then kneeled beside Plaintiff, and while holding onto Plaintiff's hair, he pushed Plaintiff's face and shoulders into the ground two more times. (*Id.* at 1:57-2:01.) One of the unidentified officers then kneeled directly onto the right side of Plaintiff's back while Defendant Guynup held Plaintiff's face in the floor. (*Id.* at 2:01.) For the next 40 seconds, Plaintiff remained in this position while two other unidentified officers removed Plaintiff's handcuffs. (*Id.* at 2:01-2:40.)

Once the handcuffs were removed, but without allowing Plaintiff the opportunity to stand on his own, Defendant Guynup grabbed the back collar of Plaintiff's jumpsuit and pulled his upper body off the ground. (*Id.* at 2:42.) Defendant Guynup then attempted to drag Plaintiff on the ground until an unidentified officer grabbed the right pant-leg of Plaintiff's jumpsuit. (*Id.* at 2:42; Dkt. No. 45, Disc 2, Track 1, at 1:02:28-1:02:29.) With this grip, the two officers then lifted Plaintiff slightly off the ground and moved him through the doorway of his cell. (Dkt. No. 45, Disc 1, Track 1, at 2:45-2:47; Dkt. No. 45, Disc 2, Track 1, at 1:02:31-1:02:32.) After the

officers released Plaintiff's jumpsuit (allowing Plaintiff to drop to the ground), Defendant

Guynup used the bottom of his right foot to push Plaintiff's lower body inside the cell. (Dkt. No.

45, Disc 2, Track 1, at 2:47-2:49; Dkt. No. 45, Disc 1, Track 1, at 1:02:32-1:02:34.)

c.    **Plaintiff's Injuries**

Plaintiff's Amended Complaint alleges that he suffered multiple injuries as a result of the

Defendant Guynup's use of force, as described above. (Dkt. No. 26 at 4.) Plaintiff testified in his

deposition that, before his arrest by New York State Troopers, he had "one scratch on [his] nose

from cutting wood" on September 18, 2007. (Dkt. No. 44, Attach. 4 at 79.) Specifically, Plaintiff

testified that he "had cut [his] nose – there was a cut on [his] nose from cutting wood . . . it was a

cut on [his] nose and it – you know, the scab come off it and it was bleeding a little bit. . . ." (*Id.*)

Plaintiff characterized his facial injuries after the incident with Defendant Guynup as "rug burn"

and "road rash." (*Id.* at 106.)

There are five photographs of Plaintiff's facial injuries in the record, one of which was

taken by the New York State Troopers before Plaintiff being delivered to the jail. (Dkt. No. 44,

Attach. 5 at 56-60.) This photograph depicts several cuts and scratches on Plaintiff's nose and

left cheek. (*Id.* at 56.) The photograph, however, is in black and white, and it is difficult for the

Court to discern, and therefore evaluate the nature of Plaintiff's pre-arrest injuries. (*See

generally id.*) The other four photographs, which Defendants do not contest, were taken shortly

after he was released from jail.[6] (Dkt. No. 44, Attach.4 at 108.) One of the photographs depicts

the cuts on Plaintiff's face as more pronounced and, perhaps, slightly more swollen than the

---

[6]    Specifically, one photograph was taken by Plaintiff's mother immediately upon
being released from jail. (Dkt. No. 44, Attach. 5 at 57.) The other three photographs were taken
by Plaintiff's uncle when he was released from the hospital the same day he was released from
jail. (Dkt. No. 44, Attach. 5 at 58-60.)

photograph taken by the New York State Troopers. (Dkt. No. 44, Attach. 5 at 57.) However, all of those photographs, too, are difficult to discern because they are in black and white. (*See generally id.*)

Justice Douglas testified in his deposition that he recalled seeing a scratch on Plaintiff's nose at the time of Plaintiff's arraignment. (Dkt. No. 44, Attach. 5 at 45.) However, Justice Douglas testified that he was unable to "give a good description" of any injuries on Plaintiff's face because Plaintiff was standing approximately 20-22 feet away from him, Justice Douglas was "looking down[,] and it was 1:00 in the morning." (Dkt. No. 44, Attach. 5 at 46-47.)

Plaintiff visited Champlain Valley Physicians Hospital ("CVPH") on September 19, 2007, after he was released from the jail. (Dkt. No. 44, Attach. 6 at 10.) Plaintiff's CVPH medical records for that date indicate that Plaintiff was diagnosed with wrist and facial abrasions, a chest wall strain, and a concussion with loss of consciousness. (*Id.* at 17.) The medical records for the same date also indicate that Plaintiff was directed to take Tylenol or ibuprofen as need for pain. (*Id.*)

### C.    Defendant County of Clinton's Motion for Summary Judgment

In support of its motion for summary judgment, Defendant County of Clinton generally asserts that there is no genuine dispute of material fact that it did not maintain a policy that caused Plaintiff's alleged constitutional deprivations. (Dkt. No. 43, Attach. 2 at 4-6.)

In opposition, Plaintiff generally asserts the following two arguments: (1) the fact that other officers assisted Defendant Guynup in his use of force against Plaintiff demonstrates that Defendant County of Clinton maintains an unconstitutional policy (Dkt. No. 46, Attach 2 at 5); and (2) Defendant Guynup held authority to act on behalf of Defendant County of Clinton (*id.* at 4).

### D.     Defendant Guynup's Motion for Summary Judgment

In support of his motion for summary judgment, Defendant Guynup generally asserts the following three arguments: (1) Plaintiff's injuries, as they are portrayed in the photographs in the record, were preexisting at the time Plaintiff was taken into custody by New York State Troopers (Dkt. No. 44, Attach. 3 at 5-6); (2) assuming *arguendo* that Defendant Guynup caused the injuries of which Plaintiff complains, the injuries are *de minimis* (*id.* at 6); and (3) Defendant Guynup's alleged use of force against Plaintiff was a good-faith effort to maintain and restore order (*id.* at 7).

In opposition, Plaintiff generally asserts the following two arguments: (1) surveillance footage portraying the incident between Plaintiff and Defendant Guynup creates a genuine issue of material fact as to whether Defendant Guynup's use of force was justified (Dkt. No. 46, Attach. 2 at 3-4, 5); and (2) summary judgment is inappropriate because Plaintiff alleged "actual malice on the part of" Defendant Guynup (*id.* at 4).

In reply to Plaintiff's opposition, Defendant Guynup generally asserts the following three arguments: (1) because Plaintiff failed to specifically deny certain factual allegations contained in Defendant Guynup's Rule 7.1 Statement, those allegations are deemed admitted pursuant to Local Rule 7.1(a)(3) (Dkt. No. 47 at 4); (2) the alleged use of force by Defendant Guynup was "necessary for a legitimate disciplinary matter" (*id.* at 5); and (3) Plaintiff has failed to establish that he suffered any injury as a result of the alleged use of force by Defendant Guynup (*id.* at 6).

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not

recite that well-known legal standard in this Decision and Order. Instead, the Court directs the

reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL

3165551, at \*2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal

standard.

**B.    Legal Standard Governing Plaintiff's Claim**

Plaintiff bases his claims against both Defendants on 42 U.S.C. § 1983 ("Section 1983"),

which reads, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage of any State . . ., subjects or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides

"a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386,

393-94 (1989) (internal quotation marks omitted). The Court addresses the legal standards

governing Plaintiff's claims against each defendant separately below.

**1.    Municipal Liability**

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that

"[l]ocal governing bodies . . . can be sued directly under [Section 1983] for monetary,

declaratory, or injunctive relief where. . . the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by that body's officers." *Monell*, 436 U.S. at 690, *accord Amnesty Am. v. Town

of West Hartford*, 361 F.3d 113, 124-25 (2d Cir. 2004). To prevail on a Section 1983 claim

against a municipality, the plaintiff must demonstrate that the policy, ordinance, regulation, or

decision adopted by the municipality, and implemented by its employee(s), caused the plaintiff's

alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92. This can be shown either by establishing that the policy itself is unconstitutional, or that the application of an otherwise lawful policy is unconstitutional. *Amnesty Am.*, 361 F.3d at 125. However, a municipality cannot be held liable under Section 1983 for the "actions alleged to be unconstitutional by its employees below the policymaking level on the basis of *respondeat superior*." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *see also Monell*, 436 U.S. at 691; *Amensty Am.*, 361 F.3d at 125.

### 2. Excessive Force

A court analyzing a claim of excessive force under Section 1983 must first determine the "specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394, *accord Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).

There are three standards that might apply, "depending on when the alleged [excessive force] occurred." *Lemmo v. McKoy*, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011). If the alleged excessive force was used before arraignment, then Fourth Amendment standards apply. *Graham*, 490 U.S. at 394, *accord Lemmo*, 2011 WL 843974, at *4.[7] If the alleged excessive force occurs post-arraignment, but before conviction, then Fourteenth Amendment standards apply. If the alleged excessive force occurs after conviction, then Eighth Amendment standards apply. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).[8]

The Second Circuit has held that the legal standard for an excessive force claim is the same under either the Eighth or Fourteenth Amendments. *Walsh*, 194 F.3d at 48. As a result, the

---

[7]     *See also Tribie v. Parwanta*, 10-CV-6016, 2012 WL 246619, at *7 (E.D.N.Y. Jan. 26, 2012); *Sloan v. Kraus*, 06-CV-5372, 2010 WL 3489397, at *10 (S.D.N.Y. Sept. 3, 2010).

[8]     *See also Caiozzo*, 581 F.3d at 69; *Lemmo*, 2011 WL 843974, at *4.

Court will use the governing authority on Eighth Amendment excessive force claims, *Hudson v. McMillian*, 503 U.S. 1 (1992), as its guide.

In *Hudson*, the Supreme Court held that "whenever prison officials stand accused of using excessive physical force in violation of the [Constitution], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. A plaintiff claiming excessive force must satisfy two requirements, "one subjective, and the other objective." *Walsh*, 194 F.3d at 49.

"First, the subjective requirement is satisfied if the defendant has a sufficiently culpable state of mind shown by actions characterized by wantonness." *Id.* (internal citations and quotation marks omitted). In excessive force cases, "the 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Hudson*, 503 U.S. at 7). The Second Circuit clarified that "the good-faith standard is appropriate" because "decisions to use force are often made under great pressure and involve competing interests." *Blyden*, 186 F.3d at 263.

To determine whether a defendant's actions amounted to "wantonness," courts should consider the following factors: (1) the extent of the plaintiff's injuries, (2) the need for the application of force, (3) the correlation between the need for force and the amount of force used, (4) the threat reasonably perceived by the defendant, and (5) any efforts made by the defendant to temper the severity of a forceful response. *Hudson*, 503, U.S. at 7.[9]

---

[9]    *See also Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993); *Velez v. McDonald*, 10-CV-0483, 2011 WL 1215442, at *3 (D. Conn. Mar. 27, 2011); *Gonzales v. Carpenter*, 08-CV-0629, 2011 WL 768990, at *14 (N.D.N.Y. Jan. 3, 2011) (Report-Recommendation, Baxter, M.J.), *adopted by* 2011 WL 767546 (N.D.N.Y Feb. 25, 2011) (Kahn, J.); *James v. Coughlin*, 13 F. Supp.2d 403, 409 (W.D.N.Y. 1998); *Brown v. Busch*, 954 F. Supp. 588, 594 (W.D.N.Y. 1997).

To establish the objective requirement, "it must be shown that the deprivation is objectively sufficiently serious or harmful enough." *Id.* (citing *Hudson*, 503 U.S. at 8). However, this does not require that the plaintiff suffer a "serious" or "significant" injury, as long as the amount of force used is not *de minimis*. *Hudson*, 503 U.S. at 7-10. Moreover, *Hudson* created an explicit exception "that even *de minimis* uses of force are unconstitutional if they are 'repugnant to the conscience of mankind.'" *Walsh*, 194 F.3d at 50 (quoting *Hudson*, 503 U.S. at 10). The Second Circuit clarified that a malicious use of force "constitute[s a Constitutional] violation. . . *per se*" because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263.

## III.    ANALYSIS

### A.    Plaintiff's Claim Against Defendant County of Clinton

As stated in Part I.C. of this Decision and Order, Defendant County of Clinton generally asserts that there is no genuine dispute of material fact that Defendant County of Clinton did not maintain a policy that caused Plaintiff's alleged constitutional deprivations. (Dkt. No. 43, Attach. 2 at 4-6.) In opposition, Plaintiff generally asserts the following two arguments: (1) the fact that the other officers assisted Defendant Guynup in his use of force against Plaintiff demonstrates that Defendant County of Clinton maintains a policy that caused Plaintiff's constitutional deprivations (Dkt. No. 46, Attach. 2 at 5); and (2) Defendant Guynup held authority to act on behalf of Defendant County of Clinton (*id.* at 4.)

The Court agrees with Defendant County of Clinton that there is no genuine dispute of material fact that it did not maintain an unconstitutional policy that caused Plaintiff's alleged constitutional deprivations. More specifically, the Court finds only four pieces of evidence in the record that could be liberally construed to even address this issue. First, Defendant Guynup testified in his deposition that "affirmative duty states that" he was not allowed to leave Plaintiff

in the holding cell "to hurt himself or anybody else" (Dkt. No. 44, Attach. 4 at 173; Dkt. No. 44,

Attach. 5, at 13.) Second, as Plaintiff argues, on-duty officers assisted Defendant Guynup in

controlling Plaintiff after Defendant Guynup pulled Plaintiff out of the holding cell. (Dkt. No.

45, Disc 1, Track 1, at 1:37-2:47.) Third, as Plaintiff argues, Defendant Guynup was authorized

to act on behalf of Defendant County of Clinton in his capacity as an employee of the Clinton

County Sheriff's Department. (Dkt. No. 44, Attach. 4 at 165; Dkt. No. 44, Attach. 5 at 5.)

Fourth, Sergeant Dashnaw, the supervisor on duty when Plaintiff began his disruptive behavior,

deliberately decided to ignore Plaintiff. (Dkt. No. 44, Attach. 4 at 189; Dkt. No. 44, Attach. 5 at

29.) If Defendant County of Clinton maintained an unconstitutional policy of the kind Plaintiff

alleges, a rational fact finder might expect that Sergeant Dashnaw to have reacted in the same or

similar manner as Defendant Guynup.

 Taken as a whole, and "draw[ing] all reasonable inferences against" Defendant County of

Clinton, the Court finds that no rational fact finder could conclude that Defendant County of

Clinton maintained a policy that caused Plaintiff's alleged constitutional violations based on this

evidence. *Pitts*, 2009 WL 3165551, at *2.

 More specifically, the Court finds the record devoid of any admissible evidence relating

to any of Defendant County of Clinton's policies in general. The Court notes that it is possible

that Defendant Guynup's statement, quoted above, referred to a policy maintained by Defendant

County of Clinton. (Dkt. No. 44, Attach. 4 at 173; Dkt. No. 44, Attach. 5, at 13.) However, given

the context of the statement, and the absence of any follow-up questioning by the examiner that

might provide clarification, the Court cannot conclude as much. (*See generally id.*)

 Moreover, to establish a Section 1983 claim against Defendant County of Clinton (a

municipality), it is not enough for Defendant Guynup to be "authorized to act on behalf of"

Defendant County of Clinton. (Dkt. No. 46, Attach. 2 at 4.) Instead, Defendant Guynup must

have held some policy-making authority. *See Zahra*, 48 F.3d at 685 ("A municipality may not be held liable in an action under [Section 1983] for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*.").[10] There is no evidence in the record to create a genuine issue of material fact regarding whether Defendant Guynup was authorized to make policy for Defendant County of Clinton. Rather, the record demonstrates that Defendant Guynup was merely an employee in the Clinton County Sheriff's Department who, although held some supervisory authority, ultimately reported to superiors. (Dkt. No. 44, Attach. 4 at 166; Dkt. No. 44, Attach. 5 at 6.)

The Court would add only that, generally, a single incident will not suffice to raise an inference of the existence of a custom or policy–especially where (as here) the incident involved only actors below the policymaking level. *See White v. City of Syracuse*, 11-CV-1098, 2012 WL 254075, at *1, n.1 (N.D.N.Y. Jan. 27, 2012) (Suddaby, J.) (collecting cases supporting referenced point of law).

For all of these reasons, the Court finds there is no genuine dispute of material fact that Defendant County of Clinton did not maintain an unconstitutional policy that caused Plaintiff's alleged constitutional deprivations. As a result, the Court grants Defendant County of Clinton's motion for summary judgment.

**B.     Plaintiff's Claim Against Defendant Guynup**

As stated in Part I.D. of this Decision and Order, Defendant Guynup generally asserts the following three arguments in support of his motion for summary judgment: (1) Plaintiff's

---

[10]     *See also Monnell*, 436 U.S. at 691 ("[I]n other words, a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory."); *Amnesty Am.*, 361 F.3d at 125 ("[C]onstitutional torts committed by [a municipality's] employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights . . . .").

16

injuries, as they are portrayed in the photographs in the record, were preexisting at the time

Plaintiff was taken into custody by New York State Troopers (Dkt. No. 44, Attach. 3 at 5-6);  (2)

assuming *arguendo* that Defendant Guynup caused the injuries of which Plaintiff complains, the

injuries are *de minimis* (Dkt. No. 44, Attach. 3 at 6); and (3) Defendant Guynup's alleged use of

force on Plaintiff was a good-faith effort to maintain and restore order and discipline (Dkt. No.

44, Attach. 3 at 7).

In opposition to Defendant Guynup's motion, Plaintiff generally asserts the following

two arguments: (1) surveillance footage portraying the incident between Plaintiff and Defendant

Guynup creates a genuine issue of material fact as to whether Defendant Guynup's alleged use of

force was an effort to restore order (Dkt. No. 46, Attach. 2 at 3-4, 5); and (2) summary judgment

is inappropriate because Plaintiff has alleged "actual malice on the part of" Defendant Guynup

(Dkt. No. 4).

After an extensive review of the record, and giving special attention to the surveillance

footage of the interactions between Defendant Guynup and Plaintiff, the Court agrees with

Plaintiff that a genuine issue of material fact exists as to whether Defendant Guynup's use of

force was a good-faith effort to restore order. The Court addresses each of Defendant Guynup's

arguments below.

As an initial matter, the Court notes that Plaintiff's excessive force claim is grounded in

the Fourteenth Amendment because the alleged constitutional violation occurred after Plaintiff

had been arraigned on the driving while intoxicated charge, but before he was convicted. (*See*

*generally* Dkt. No. 44, Attach. 4.) *Caiozzo*, 581 F.3d at 69; *Walsh*, 194 F.3d at 47.

Defendant Guynup first argues that there is no genuine dispute of material fact that his

use of force did not cause the injuries alleged by Plaintiff. (Dkt. No. 44, Attach. 3 at 5-6.) The

Court, however, holds that a rational fact finder could find that the following evidence, taken as

a whole, demonstrates causation: (1) Plaintiff's deposition testimony that his pre-existing facial injuries included only a scratch on his nose (Dkt. No. 44, Attach. 4 at 79, 109); (2) Justice Douglas' deposition testimony that he could only clearly decipher a scratch on Plaintiff's nose at the time of Plaintiff's arraignment (Dkt. No. 44, Attach. 5 at 45, 46, 49); (3) surveillance footage showing Plaintiff's face before Defendant Guynup pulled Plaintiff out of the cell (Dkt. No. 45, Disc 2, Track 1 at 47:54, 47:58, 49:03-49:06); (4) the photograph of Plaintiff's face taken by New York State Troopers before the incident with Defendant Guynup (Dkt. No. 44, Attach. 5 at 56) as compared with the photographs taken after Plaintiff was released from the jail and hospital (Dkt. No. 44, Attach. 5 at 57-60); and (5) the CVPH medical records indicating that Plaintiff's diagnoses included wrist and facial abrasions, a chest wall strain, and a concussion with loss of consciousness (Dkt. No. 44, Attach. 6 at 17).

Defendant Guynup's second argument is that, even assuming he did cause Plaintiff's injuries, such injuries are *de minimis* and thus they are insufficient for a Section 1983 claim. (Dkt. No. 44, Attach. 3 at 6.) This argument invokes the objective element of a Section 1983 claim. *Hudson*, 503 U.S. at 8-10. Under the circumstances, however, the proper inquiry is not whether the *injuries* are *de minimis* (or insignificant), but whether the *use of force* is *de minimis*. This is because, as explained above in Part II.B.2. of this Decision and Order, a plaintiff can establish the objective element of an excessive-force claim even where his injuries are not serious or significant (or, if they are, as Defendants characterize them, "*de minimis*") if he can establish either that (1) the use of force is something more than *de minimis* or (2) the use of force, while *de minimis*, is "repugnant to the conscience of mankind." Stated simply, under the circumstances, the Court must look at Defendant Guynup's use of force, rather than at Plaintiff's injuries. Because none of the parties raises the issue of whether Defendant Guynup's *use of force* was *de minimis*, the Court may not, and does not, decide that issue on the pending motions for summary judgment.

Defendant Guynup's third argument in support of his motion for summary judgment addresses the "core judicial inquiry" of a Section 1983 claim. *Hudson*, 503 U.S. at 6. Specifically, Defendant Guynup argues that the use of force applied on Plaintiff was applied in a good-faith effort to restore order. (Dkt. No. 44, Attach. 3 at 7.) The Court acknowledges that the use of force is permitted when it is used "in good-faith . . . to maintain or restore discipline," and therefore, the Court focuses its analysis on whether there is a genuine issue of material fact as to whether Defendant Guynup's use of force was applied in a good-faith effort to restore order and discipline. *Hudson*, 503 U.S. at 7.

After an extensive view of the record, the Court finds a rational fact finder may find that the following evidence, taken as a whole, demonstrates that Defendant Guynup's use of force was *not* applied in a good-faith effort to restore order: (1) by all accounts, Plaintiff's behavior included yelling and punching, pounding, and kicking the windows of the holding cell, but there is little evidence demonstrating the degree of the disruption Plaintiff caused by such behavior;[11] (2) for an unknown period of time, before Defendant Guynup's arrival at the jail, Sergeant Dashnaw, the supervisor on duty, consciously chose to ignore Plaintiff's behavior (Dkt. No. 44, Attach. 4 at 189); and (3) the surveillance footage of Defendant Guynup's reactions to Plaintiff, without sound, could be interpreted by a fact finder as disproportionate to Plaintiff's behavior.[12]

---

[11]     The Court considered three specific facts that support this conclusion. First, Sergeant Dashnaw, without elaborating on the subject, described Plaintiff's behavior as "disruptive." (Dkt. No. 44, Attach. 4 at 189; Dkt. No. 44, Attach. 5 at 29.) Second, Defendant Guynup describes Plaintiff's behavior as "a lot of banging and kicking and yelling" but he did not describe how such behavior affected the operations of the jail. (Dkt. No. 44, Attach. 4 at 167; Dkt. No. 44, Attach. 5 at 7.) Third, Plaintiff testified, and the surveillance footage confirms, that while he pounded, knocked and tapped on the windows of the cell in an effort to secure a blanket, an officer sat at a desk across from the cell without reacting. (Dkt. No. 44, Attach. 4 at 88; *see generally* Dkt. No. 45, Disc Two, Track 1.) Taken together, this evidence could create a question as to the degree of disruption actually caused by Plaintiff.

[12]     More specifically, even assuming that Plaintiff caused the highest degree of disruption, Plaintiff's behavior (consisting of punching, pounding, and kicking the windows of

For all of these reasons, the Court finds that, taken as a whole, the record evidence creates a genuine issue of material fact as to whether Defendant Guynup's use of force was applied in a good-faith effort to restore order in the jail. As a result, the Court denies Defendant Guynup's motion for summary judgment.

**ACCORDINGLY,** it is

**ORDERED** that Defendant County of Clinton's motion for summary judgment (Dkt. No. 43) is **GRANTED**; and it is further

**ORDERED** that Defendant Guynup's motion for summary judgment (Dkt. No. 44) is **DENIED**; and it is further

**ORDERED** that Plaintiff's civil rights claim, pursuant to 42 U.S.C. § 1983, against Defendant County of Clinton is **DISMISSED** from Plaintiff's Amended Complaint (Dkt. No. 26); and it is further

**ORDERED** that counsel are directed to appear on **MARCH 26, 2012** at 2:00 p.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **March 16, 2012**, and the parties are directed to engage in meaningful settlement negotiations prior to the 3/26/12 conference.

Dated: February 28, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

the holding cell and yelling for an extended period of time), presents a question of fact as to whether that behavior warranted the amount of force Defendant Guynup applied after he pulled Plaintiff to the ground. (Dkt. No. 45, Disc One, Track 1 at 1:37-2:01.) This is especially true because there is evidence to suggest that Plaintiff, once he had been pulled to the ground, communicated to Defendant Guynup that he would cooperate. (Dkt. No. 44, Attach. 4 at 173; Dkt. No. 44, Attach. 5 at 13; Dkt. No. 44, Attach. 4 at 98.)